26 C.C.P.A. (Patents)

## In re ALTENKIRCH.

### Patent Appeal No. 4068.

Court of Customs and Patent Appeals.
March 27, 1939.

George A. Brace, of Chicago, Ill. (Harry S. Demaree, of Chicago, Ill., and Elmer Stewart, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 12, 16 to 19, inclusive, and 32 in appellant's application for a patent for an alleged invention relating to an apparatus for drying various materials, such as, for example, lumber and agricultural products.

Claim 12 is illustrative of the appealed claims. It reads: "12. Apparatus for continuously drying a substance with the aid of dry air, comprising two chambers, means for conveying absorbing material through said chambers in a closed cycle, means for conveying the substance to be dried through one of said chambers and means for moving air through said chambers in counterflow to the movement of said absorbing material."

The references are:

Hebert (Br.), 6,370, January 14, 1833.
De Bevoise et al., 205,606, July 2, 1878.
Swiss patent, 78,829, February 1, 1919.

Certain method claims, rejected by the Primary Examiner, were allowed by the Board of Appeals.

The patent to Hebert relates to an apparatus and process for the manufacture of bread. It discloses an endless conveyor by means of which grain may be conveyed, through a drying chamber as many times as is necessary.

The patent to De Bevoise et al. relates to a process for steaming and drying grain. It discloses the use of absorbent material, such as "sponge, wool, wood, sawdust, &c.," to absorb "surplus moisture resulting from condensation of the steam after it has passed through the grain or substance being dried or cured."

The Swiss patent discloses an apparatus for drying materials, such as "wet washing wool." It comprises two vertical shafts connected at the top by a horizontally extending drying chamber. Between the vertical shafts are two passageways, in one of which heating elements are arranged. A continuous bucket conveyor conveys the material being dried upwardly through the left-hand shaft, then through the horizontally extending drying chamber, and downwardly through the right-hand shaft to an opening or doorway therein where the material is removed. The apparatus is so arranged that fresh air enters the doorway at the bottom of the right-hand shaft, flows upwardly in counterflow to the movement of the material being dried, and into one of the passageways between the shafts, then downwardly and into the other passageway, then upwardly

over the heating elements and into the drying chamber, then downwardly through the left-hand shaft in counterflow to the material being dried to an opening where it is discharged from the apparatus. The material being dried is continuously heated and dried while passing upwardly through the left-hand shaft and through the horizontally extending drying chamber, and is cooled while passing downwardly through the right-hand shaft by the fresh air passing upwardly through that shaft. The fresh air in the right-hand shaft is preheated by coming in contact with the material being dried. The bucket conveyor operates in a cycle, and the material to be dried may be passed through the apparatus as many times as is necessary to completely dry it.

In his application appellant discloses a "framed structure" having three chambers, the middle or storage chamber for dried material being higher than the other two. The other two chambers are of equal height and may be called the north and south chambers. The north chamber is for drying air, and the south chamber which is heated is a material drying chamber. Absorbent material, such as wood, is conveyed in a closed cycle through both the north and south chambers. It drys the air in the north chamber, and is itself dried in the south chamber. This arrangement, it is stated in appealed claim 32, is "such that the absorbent material is alternately activated in the heated [south] chamber and caused to absorb moisture from the air in the cooled [north] chamber so as to dry the air in the cooled [north] chamber thereby enabling the substance being dried to be exposed to dry air in the heated [south] chamber." Fresh air enters the north chamber from the east side, passes westwardly therethrough in counterflow to the movement of the absorbent material, thence downwardly on the west side of the building into the south chamber, thence eastwardly in counterflow to the material being dried and also to the absorbent material, and then out of the building through a flue.

Each of the appealed claims calls for means for conveying the absorbent material through the north and south chambers in a closed cycle, means for moving air through said chambers in counterflow to the movement of the absorbent material, and means "for conveying the substance to be dried into *one* of said chambers." (Italics ours.)

In its original decision the board stated that the appealed claims "stand rejected on the Swiss patent. These claims are not particularly definite but in our view are properly rejected. As a matter of fact, they define *simply means for moving absorbent material in a cycle through a heated chamber and a cooled chamber and causing air to pass through the cooled chamber and then through the heated chamber back to the atmosphere.* It seems to us the Swiss patent, having a conveyor for passing absorbent material to be dried first through chamber 1 where it is heated and then through the chamber 2 where it is cooled and in counter-flow to the fresh air through the passage 5 which has an exit at 4 in chamber 1, substantially meets the construction called for in these claims." (Italics ours.)

In denying appellant's petition for reconsideration of its original decision rejecting the claims here on appeal on the Swiss patent, the board stated in substance:

We noted that the patentee provides "a conveyor for passing absorbent *material to be dried* first through chamber 1 where it is heated and then through the chamber 2 where it is cooled", etc. [Italics quoted.] *We indicated that the material to be dried is also the absorbent material in the patent and the claims do not so clearly and definitely set forth a different operation as to present patentable novelty.* [Italics ours.] These claims are too broadly expressed. The same material could act as an absorbent in chamber 2 and also be dried in chamber 1 or vice versa. Claim 12 refers to dry air but the Swiss patent heats the fresh air which would thus be dried.

"The reference to a closed cycle is of no patentable significance in the claims."

We are in accord with the views expressed by the tribunals of the Patent Office that the Swiss patent discloses a bucket conveyor which operates in a cycle; that the material being dried could be passed through the apparatus in a closed cycle; that the moving air in the Swiss patent is in counterflow to the movement of the material being dried; that the fresh air is preheated therein before it reaches the heating chamber; that means are disclosed in the patent for carrying out the disclosed operation; and that it is old as disclosed in the patent to De Bevoise et al. to use an absorbent material to dry air. It will be observed, however, that the appealed claims call not only for means for

conveying absorbent material through the north and south chambers in a closed cycle, and means for moving air in counterflow to the movement of the absorbent material, but also for *additional means* for conveying the material to be dried through the drying chamber. Accordingly, although the bucket conveyor in the Swiss patent may be used, as stated by the board, as the means for conveying both the absorbent material and the material to be dried through the apparatus in a closed cycle, the patent does not disclose an additional means for conveying the material to be dried through the drying chamber. It is apparent, therefore, that appellant's conception and the structure for putting it into practical use are not disclosed nor suggested by the references.

We are of opinion that the appealed claims are patentable over the prior art cited, and that the board erred in rejecting them.

The decision is reversed.

Reversed.